In our second and last case today is Sandra White versus a lot of folks I guess mainly here today, Union Carbide would be the entity. And you pronounce your name Mr. Rutgeschulke? Yes ma'am. All right, well good, I got it on the first try. You've brought us quite an interesting question. Well, you know as a trial lawyer sometimes that happens. Jonathan Rutgeschulke, Dawn Bestman on behalf of Sandra White and the estate of James White. Your honors, I'd like to go through four things quickly with the court today. I know we have limited time. First, I'd like to start with a brief overview of the context of this asbestos products liability case. I'd like to then shift to an analysis of the facts of this case as this court must find them in this case where the district court granted the Union Carbide's single-factor bright-line black-and-white test for specific jurisdiction. A test that is contrary to 50 years of established jurisprudence both of the United States Supreme Court and the 11th Circuit which has repeatedly said over and over that the shades of gray predominate in jurisdictional questions and that there are no checklists that can solve these jurisdictional questions. Even applying Union Carbide's test under Florida law, particularly the continuing duty to warrant set forth in the Janssen's case and the fact that Mr. Waite's injury accrued at the time of the diagnosis of his disease under the Spiewak case, there is an injury caused by Union Carbide's tortious conduct in the state that allows exercise of specific jurisdiction. Then I'd like to talk briefly about Bristol-Myers Squibb and Worldwide Volkswagen and how those cases also show for us that the exercise of specific jurisdiction under the facts of this case is correct. And finally closing with the effects of this court's certified question to the Florida Supreme Court 27 years ago in the Waite versus PepsiCo case and Union Carbide's choice to register for the right to conduct intrastate business in the state of Florida. Because 27 years ago the Florida Supreme Court indicated in the Waite case that when a company chooses to come to Florida and conduct such intrastate business as it is required to register to do business in Florida and it appoints an agent for service of process, it can then be sued in cases that have no connexity to the state of Florida. That's general jurisdiction. So moving to the overview, this is an asbestos products liability case and I wanted to take just a minute to highlight for the court that the decision in this case is going to have far-reaching implications on the elephantine mass of asbestos cases that Justice Souter described in the Ortiz case that has, I don't want to say plagued the court system for the last 30 years, but certainly been an incredible burden. The epidemic of asbestos disease... And I don't mean to interrupt you, which I am interrupting you, but we understand the impact. These are such complicated issues I'd really appreciate you getting right down to these tough issues for us in a very limited amount of time. Thank you ma'am. The specific jurisdiction, if we take Union Carbide and we assume arguendo that they're strict but in-state plaintiff specific but for causation test, which is what they're arguing for, and in fact is what Bristol Myers Squibb argued for in the Bristol Myers case in which the Supreme Court ignored in their decision. Even if we take Union Carbide's test, we pass here in this case. Florida law has always required, since the effective product has a continuing duty to warn individuals of the dangers of that product. And we allege specifically in the complaint, this is at record page 58 and 59 in the complaint, paragraph 17i, that Union Carbide failed to warn about the dangers of past exposures to asbestos and in 17q, that they failed to warn about the dangers of future exposures to asbestos. This is the continuing duty to biological reality first discussed in the Burrell case before the Fifth Circuit in the early 1970s, that asbestos disease results biologically from the accumulated effects of a lifetime of asbestos exposure. So Mr. Waite was exposed to Union Carbide asbestos in Massachusetts. He moves to Florida in 1979 or so. That asbestos continues to work biological effects on his body. He then is exposed to more asbestos in Florida. That asbestos combines with the Union Carbide asbestos he breathed in Massachusetts and eventually results in the indivisible injury of his asbestos cancer. Just as an aside, essentially if that argument prevails, it means that Union Carbide wasn't an employer. So you understand with an employer that's exposed employees, they would have some means of identifying. Union Carbide sold a lot of product all over the country. And what essentially you're saying is with this I guess if every state has a claim like a failure to warn, there's going to be jurisdiction in every state. And I don't know how Union Carbide would do that. Would they go on TV and say, by the way we've been selling products, that's what we'd be looking at? So the law provides, so we're only going to have jurisdiction in states that have sufficient connection to Union Carbide that it makes it reasonable for the state to exercise its coercive power over them. That's the entire analysis in the Bristol-Myers decision, right? In which the court considers and ignores Bristol-Myers' argument that you have to have strict but-for causation in the state where the forum is brought. And says instead, no, really our analysis in this case is all about what's the connection between the state and the out-of-state residents' claims. And it says that's the thing that tells us whether it's reasonable or not. So Bristol-Myers is going to prevent plaintiffs. If Mr. Wade had lived his whole life in Massachusetts, he'd get exposed in Massachusetts, he'd get sick in Massachusetts, all the things that happen in Florida afterwards. And then he decides, you know what, I'm going to go sue in Florida, right? Bristol-Myers says he can't do that. But there's no allegation here of forum shopping. Mr. Wade moved to Florida in 1979, right? He lived there for almost four decades. His wife... You're saying the connection is that while he was in Florida, he suffered the harm that was caused by the failure to warn. Absolutely. And that's the SPIWAC decision, right? Union Carbide's strained interpretation of the SPIWAC decision ignores what it says over and over, which is there is no legal injury until the manifestation of the disease. Although there may be an impact of the asbestos fibers into the body that constitutes an injury that suffices the impact rule when you later develop a disease, that there is no legal injury until manifestation and diagnosis of the disease. That's the entire point of SPIWAC, which deals with retroactive application of a criteria bill that set conditions for when you can bring an asbestos case in Florida. SPIWAC says the bill cannot be retroactively applied to anyone whose disease had manifested and been diagnosed at the time the statute was enacted because at that point they had an injury that was provided protection against retroactive elimination. What the court did not do was adopt the rule that Union Carbide says SPIWAC would mean, which is if in fact the injury occurs at inhalation, SPIWAC's ruling would have to be that anyone that had breathed asbestos prior to the enactment of the statute could not have the statute applied to them. That's not what SPIWAC did. It said you don't have a legal injury until your disease manifests, and then and only then. But really, shouldn't we be analyzing this from the perspective of the connection between the defendant, the forum, and the litigation, rather than where the plaintiff happens to be? And second of all, the statutes that give rise to cause of action, isn't that really for purposes of statute of limitation rather than the activity that allegedly created the injury? If I can answer your second part first, Judge Antoon, the answer to that is no. It's not for limitations purposes only, because in fact what they're talking about is when you have a right that is due due process protection in the SPIWAC case, and the right that gives you that is a legal injury. The legal injury is when you develop the disease, because all of us have breathed asbestos. That's when the cause of action arises. That's right. But is that what we should be looking at, or should we be looking at the conduct, the activity? Legal injury, right? So the question of whether they caused a legal injury in the state is answered by SPIWAC, which says the legal injury is the development of the cancer, which happens decades after you breathe the dust. We've all breathed asbestos dust, right? But almost all of us are not going to get asbestos disease. Breathing the dust without development of a disease is not an injury under Florida law. It is the development of the cancer that causes an injury to Mr. Wake. That's what SPIWAC says. It's what it means. There's no other way around it. The other part, Your Honor, the Bristol Myers case provides us a nice insight into the way that the phrase, the relationship between the defendant, the forum, and the litigation is interpreted by the Supreme Court, right? Because what we've got here, and if you look at Walden, right, the Walden case where they seized the cash in Hartsfield just down the road from here, that's a purposeful availment case. So the court looks at the Walden case and they say, well, the officer that took the cash in Hartsfield, all of his acts are in Atlanta. He does nothing to direct himself or take advantage of being in Nevada. He hasn't purposely availed himself of the benefits and privileges of being in Nevada and therefore we cannot, there is no relationship between the defendant and the forum that would allow us to exercise jurisdiction. The BMS case provides a very interesting way to conceptualize this that's different than the way I had conceptualized it in the past. I had always looked at this relationship as sort of a linear relationship where you've got the defendant, the forum, and the litigation. It's all one analysis. But in Bristol-Myers, Bristol-Myers Squibb makes exactly the argument you knew Carbide is making here. There has to be but-for causation between the defendant's acts in the forum and the individual plaintiffs at issue. They spend almost 20 pages of their brief on that, and Justice Sotomayor comments on this in her dissent. The court in its decision in Bristol-Myers completely ignores that and spends the entire case looking at the relationship between the forum and the litigation, meaning the out-of-state plaintiff's claims. And so the way I've conceptualized it for me is it's more of a triangle than a line. So we've got the relationship between the forum and the independent plaintiffs, the individual plaintiff's claims, is the forum and the litigation relationship. The defendant and the forum relationship is Walden versus Feore, right? So you have to consider them both. An alternative way to look at that, Your Honor, is looking at the Burger King considerations where they say after we do minimum contacts analysis, so we do our minimum contacts analysis, and after we do that, we then have to go and look at the forum's interest in exercising jurisdiction over the litigation, the plaintiff's interest in a convenient and effective forum to bring their claims, the interstate justice system. So whether you look at the analysis in Bristol-Myers Squibb as being a way to describe a triangular relationship between the litigation, the forum, and the defendant, or whether you look at Bristol-Myers as saying implicitly there is sufficient relationship between Bristol-Myers and California and the plaintiff's claims that they've purposely availed themselves of California, it's the same injuries, but that still doesn't mean the minimum contacts are enough because the forum doesn't have a sufficient interest in these plaintiffs. Either way, you've got to look at the relationship between the plaintiff and the forum. But aren't we bound by our Oldfield case as interpreted by Frazier with respect to the but-for causation? So what we've got there is a single incident case, not, my time is up, can I finish? We'll give you a couple more minutes, it's difficult, and we'll give opposing counsel a couple more. Thank you, Your Honor. So the ultimate holding in Oldfield, Oldfield analyzes the facts in that case, right, the boat explosion in Turks and Caicos. It analyzes this specific incident and it looks at the different tests that different circuits have applied. It then looks at but-for, says but-for is over-inclusive because it's too broad, and then the ultimate holding of Oldfield about this analysis states, while we do not suggest that our decision today establishes a definitive relatedness standard, as flexibility is essential to the jurisdictional inquiry, we do find the fact-sensitive inquiry must hew closely to the foreseeability and fundamental fairness principles forming the foundation upon which the specific jurisdiction doctrine rests. That's the ultimate holding of Judge Toflat in his opinion in the Oldfield case. And we get insight into that from the Diamond and Crystal case, which Judge Toflat authored eight days before a different panel authored Frazier. But Frazier takes that one step further. So Frazier does not discuss its analysis of the reasonableness factors, right, and to the extent that Frazier is inconsistent with the situation that we have here, I would suggest to the Court that the analysis in product liability cases as opposed to negligent conduct cases that are not related to product liability has always been purposeful availment means selling your product in the forum right. That's just the way it's been approached in Worldwide Volkswagen. It's been the way it was approached in Bristol Myers by not addressing the question. And in Worldwide Volkswagen, the Robinsons, Mrs. Robinson and her two children were burned horribly when the Audi they bought in New York was rear-ended in Oklahoma. None of the actions of Audi and of Volkswagen of America that are discussed by the Court as supporting jurisdiction in Oklahoma were involved in the causal chain of the Robinson family. Right. The Robinson family did not buy the Audi in Oklahoma. They didn't get it serviced in Oklahoma. Nothing that Volkswagen of America did in Oklahoma intersected with the causal chain of the Robinson family. Nothing that Audi did in Oklahoma intersected with the causal chain of the Robinson family. And so if Frazier is inconsistent with that, Worldwide Volkswagen must control. All right. Do you all have any other questions? Thank you. And we'll add the amount of additional time to your opposing counsel's time. Good morning. May it please the Court. My name is Matt Canigliaro. I am with Carlton Fields and I'm here today on behalf of the appellee, in this case Union Carbide. Each point raised in this appeal is resolved by existing case law. And counsel focused on point one from their brief, the specific jurisdiction argument, so I will do so as well. Ultimately, their argument on specific jurisdiction is fundamentally irreconcilable with the decision that the Supreme Court just issued in the Bristol Myers Squibb case. It's also irreconcilable with this Court's past decisions in Oldfield and Frazier, but I'll start with Bristol Myers Squibb. In that case, just as here, the argument was made that a defendant sold a product nationally. And because there were sales in the forum state, the defendant should have expected to be hailed into court there. And in fact, in that particular case, there were many plaintiffs in the case. Some were from California, others were not from California. And the argument was made that there should be this sort of sliding scale approach to relatedness. And the Supreme Court rejected, expressly rejected, both of those arguments. The discussion we've heard this morning seems to overlook that Bristol Myers Squibb won the case in front of the U.S. Supreme Court. Eight justices on the Supreme Court agreed that suit-related conduct in the forum requires a substantial connection to the plaintiff's specific claims. And I'll quote Justice Alito. He said, What is needed and what is missing here is a connection between the forum and the specific claims it issue. The language I'll focus on is specific claims it issue. Their argument ultimately is that union carbide sold asbestos to intermediate manufacturers in Florida and elsewhere. And therefore, the type of claim that is being brought here is the type of claim that people could have brought here based on sales in Florida. And therefore, there should be specific jurisdiction. And that's what Bristol Myers Squibb rejected. They confirmed in that case, which was a products case, a tort case and a products case, that you are to look at the specific product. That particular case involved Plavix, the pill. And the court looked at the pills that were taken by the out-of-state plaintiffs in that case and reasoned that that was an easy case to resolve. Because all of the relevant conduct occurred outside of California. That's what we have in this case. All of the relevant conduct by the defendant, here union carbide, occurred outside of Florida. We heard counsel this morning argue that this is a matter of a continuing duty. And I'd like to make a few points there. First of all, that's not the case they pled. That's not the normal asbestos case that's ever pled. I, just speaking for myself, I think they're quite vulnerable given the case law and what the Supreme Court ruled Bristol Myers as to the actual sale of the product. But what they're hanging their hats on today, it appears to be, is okay, maybe that one. But the failure to warn is a continuing duty and it extends wherever the plaintiff happens to be. And she happened to be for the last, he happened to be, the last couple of decades in Florida. Therefore, our injury occurred in Florida. And how do you dispute that particular position on their part? In multiple respects, Your Honor, I'll quickly just mention that there are multiple state law arguments that I'm not going to get into, but we've made them in the brief. I think dispositive and perhaps most in focus for purposes... Meaning that there's no, they don't state a claim under failure to warn? Well, no, actually meaning that the injury under Florida law occurred with the exposure, which here would have been in Massachusetts, which the recent Kelly decision confirms that interpretation of the SPIWAC case. But I'd like to focus on due process because that's really where we are here and that's how the district court disposed of this case. As a matter of due process, this is about contacts. It's the defendant's contacts. It's the defendant's contacts with the forum. As the Supreme Court has put it between Walden and Bristol-Myers Squibb, it's the suit-related conduct of the defendant in the forum that we're examining here. And the description that Your Honor just recounted from counsel is not about the defendant's conduct. It's about the plaintiff's decision to move to Florida and to live in Florida. That is not conduct by the defendant. And the language from Walden, I believe, was contacts the defendant himself created. Union Carbide obviously had no role in Mr. Wade and his family moving to Florida. This court's case law in Oldfield and Fraser also answers these same questions because in those cases, it's true, as counsel in part argues, that the court left flexibility in the analysis. But crystal clear in that flexible analysis was the language necessarily the contact must be a but-for cause of the tort. Was that standard first imposed in Fraser? Oldfield, Your Honor. Well, Oldfield mentions it, but the decision didn't hang on that, did it? Well, I think in both cases, the court looked at but-for causation and then went farther. Well, Oldfield looked at it, but Fraser adopted. Yes, Your Honor. Arguably, yeah. And the language and the application become clear from those two cases. And yes, there's flexibility, but the flexibility comes after a look at but-for causation because that's what's showing you that substantial connection between the defendant's conduct and these specific claims. And I'll go back to sort of where I was before, that what counsel really wants to argue here is that this kind of litigation could be foreseeable, but that's not the analysis the Supreme Court has required or that this court has required. It's a look at these specific claims in this case. In this case, the allegation is that Mr. Waite utilized or used a joint compound that contained union carbide asbestos and that he did that in Massachusetts. And presumably, the product was bought in Massachusetts. And there is no Florida conduct here by union carbide that plays any role in the events that gave rise to his claim. And so, to paraphrase the Bristol-Myers-Squibb decision, this too becomes an easy case when you look at it in that respect because here there is no conduct by the defendant in Florida that has this substantial connection to these specific claims. And we can frame that in terms of but-for causation. We can frame that in terms of the kind of connection that's necessary. But either way, we get to the same place, which is that there is no personal jurisdiction in Florida as a matter of due process. In this case, is there a forum where the Waites could aggregate all the defendants into one suit? At this point, there is only one defendant left. So, I'd emphasize that at the start. We are the only defendant... But isn't that a problem with your reading that it may preclude plaintiffs from doing that? Depending on the case, there may be circumstances where everyone could not be in the same case. But I don't want to say that that's this case or that's any particular case. I mean, for instance, the facts in this case weren't developed. I want to be careful if I talk about hypothetical facts that I make clear that these aren't the facts in this case. But had Union Carbide sold its asbestos to Georgia-Pacific in Massachusetts and Georgia-Pacific created its product, its joint compound in Massachusetts and sold it to Mr. Waite and he then used it there along with other products and things that he claims caused his disease, then had the suit been brought in Massachusetts, it may well be possible that everybody could have been brought into one case there. Part of what's happening with the decisions out of the U.S. Supreme Court is a focus on basically principles of federalism. And what's happening with respect to federalism is a recognition that the states are different. Not only are they different sovereigns, but they're different sets of laws. They're different... Plaintiffs may prefer to bring a case in one jurisdiction over another that have nothing to do with sort of the convenience of the parties or what's efficient for the system, but instead perhaps what maximizes recovery is potentially based on different legal systems. And what the Supreme Court has done and what this court's case law is fully aligned with is affirm some basic principles of federalism that the defendant's conduct in the forum must play that substantial role. And we can call it but-for causation. We can call it the substantial connection. We get to the same place. And so going back to Your Honor's question, there may be cases where everyone can be brought in one jurisdiction. It may not be the most favorable jurisdiction from the perspective of a plaintiff. It may not be where they want to litigate the case. And there may be cases where everybody cannot be brought into the same jurisdiction. In this case, the facts were simply developed with respect to Florida, though. And what we know is sort of a negative. What we know is that there are not facts that would allow this case to be brought in Florida as a matter of due process. Counsel did not address the consent issue and the general jurisdiction issues, so I... Well, he did touch on the White decision, if you want to discuss that with us. Yes, Your Honor. I'd be happy to. White is a Florida Supreme Court decision that addressed service of process under 48.081. The court made very clear in the case, and this had to do with the way the parties chose to argue the case, the court made very clear that it was resolving really one issue, and that was whether 48.081, on its face, by its text, included a connexity requirement. And then Justice Barquette made very clear that by the text of that statute, there was no connexity requirement, and that the various other rationales that were proposed for adding a connexity requirement all failed. And so the court ultimately held that there was no connexity requirement. And the language that's utilized by the other side here is language that references an acknowledgment. It says that by registering to do business and appointing someone as an agent for service of process, you've acknowledged that you're doing business here for purposes of jurisdiction or whatnot. And I want to emphasize to the court the significance of an acknowledgment versus consent to general jurisdiction. The acknowledgment comes from a time and a place that predates where we are today. For many, many, many years, there was a belief in the states, in the legal system, by the parties, in many a case, that if a company was doing business in a state, then it was subject to general jurisdiction in that state. And so if there's an acknowledgment that you are doing business in a state because you've retained an agent for service of process, if that legal belief is accurate, then there would be general jurisdiction over you. What we've learned in recent years from the U.S. Supreme Court is that that belief is no longer correct. It's wrong. General jurisdiction requires you to be at home. And home, as Daimler explains, requires you to be in your state of incorporation or your principal place of business, or perhaps there could be an exceptional case. That is a very stringent set of requirements. And the court said in Daimler, use the word limited. Those are a limited number of places. The court wanted home to be not all 50 states. In fact, they expressly held that simply doing business in a state is not enough. So going back to White, when the Florida Supreme Court was answering the question in that case and looking at 48.081, it was doing all of that in the context of a legal scheme that presumed that doing business in a state would give rise to general jurisdiction. We have much more recently, as of 2016, a decision from the Second District Court of Appeal in the Magwitch case where the Second District expressly took on the issue of whether registering to do business in Florida amounts to consent. And the court held it does not. And it explained in very brief fashion that White was a service of process case and that under Florida law, registering to do business is not consent. We have directed this court to other cases from around the country. I think it's still very accurate to say categorically that post-Daimler, when our understanding of these issues became much more clear, every U.S. Circuit Court and every court of last resort in the states that has looked at the consent issue has declined to read any of the state statutes, several of which are much like Florida's various statutes, as providing for consent. And as we sort of suggest in our brief, and I'll just mention it really quickly here before my time is up, were there to be such an interpretation made of Florida statutes in this case, it would result in a series of federal law problems. It would be a due process problem that where is the knowing waiver of a voluntary waiver of a known right? Where is the... Essentially, this amounts to a set of unconstitutional conditions and you run into all kinds of conflicts with the Commerce Clause. I won't belabor those. I see I'm out of time. I thank the courts for its attention. Thank you. Thank you, Your Honors. What we did not hear in Union Carbide's argument is what we didn't hear in the brief about the continuing duty to warrant. No mention of the Janssen's case at all. It's not mentioned in their brief. It's not explained away. And it wasn't discussed, mentioned or explained away today. Janssen's is controlling. Judge Carnes, you had asked, well, doesn't this mean there's going to be... What are they going to do? They're going to go on TV. They're going to do something else. The law has recognized in countless circumstances how you provide reasonable notice to people in situations where you can't identify them, whether that's looking at class action notices or estates where we're publishing or bankruptcy notices to creditors or tax sales or forfeitures. There are procedures that the law recognizes when we cannot identify a particular individual that you have to go through. And there's nothing unreasonable or unusual about that. So I just wanted to come back and mention those examples there. With respect to Judge Pryor's question about any other forum, in our briefing, we pointed out there is no other forum. And with respect to the assertion that, well, the record's not developed on this, Union Carbide's briefing below and before this court points the court to the exposure sheets that were filed in the case that discuss where the different exposures to the different defendants happened. And they don't line up. There's a minimum of at least two cases that would have to be brought. And I thought it was critical in the briefing to see that Union Carbide never acknowledged that, in fact, there is jurisdiction over it in Massachusetts where the inhalation occurred and did not acknowledge it just a minute ago. In fact, in response to the question- You, in this case, we've just got one defendant left and you would agree that you could bring the case in Massachusetts. Well, I would, but Union Carbide doesn't. Union Carbide just said, and you have to look at the briefing very carefully, they're very careful not to say that there's jurisdiction in Massachusetts. And they were very careful just a few minutes ago to not say there's jurisdiction in Massachusetts. What they said is, well, if Union Carbide had sold their asbestos to Georgia-Pacific in Massachusetts, and if Georgia-Pacific had sold the joint compound to Mr. Waite in Massachusetts, and Mr. Waite had been exposed to- Georgia-Pacific didn't buy their asbestos from Union Carbide in Massachusetts. Union Carbide is not conceding and has never conceded that there is jurisdiction where Mr. Waite breathed the dust. They have carefully and scrupulously avoided saying that throughout, including today in oral argument. So no mention of the Janssen's case. With respect to Waite, there's no interstate commerce clause problem here because the registration statute, which is Florida Statute 607-1501, states in Section 2i that you do not have to register, right, conducting, it says, the following activities do not constitute transacting business within the meaning of Subsection 1. Subsection 1 is you have to register if you do transact business in Florida. Sub I, transacting business in interstate commerce. You can do all the interstate commerce you want in Florida and you don't have to register. It's right there in the statute. Union Carbide chose to register in 1949. Union Carbide has maintained registered. I checked this morning. They're still registered this morning. 27 years since the Waite decision. Union Carbide has continued to choose to be registered to do business in Florida. And I won't read them all because we don't have time, but it goes up to Subsection M, all of the things that you can do that in Florida without having to register. There's no compulsion here. This is why Bendix-AutoLite, the case cited by Union Carbide and discussed as evidence of problems with registration statutes, actually confirms our position, right? I think you're about out of time. In Bendix-AutoLite, there was a tolling statute that said the statute of limitations doesn't run unless you register, even if you're only doing interstate commerce. Therefore, the tolling statute was unconstitutional. No problem here with that. Thank you, Your Honor. Thank you, Bud. Thank you.